Mary Frances Prevost (CSB 157782)
550 West C Street, Ste. 1830
San Diego, California 92101
Tel: (619) 692-9001
Fax: (888) 959-3790
Email: Mary@MFPlawyer.com

Attorney for Plaintiff DONALD LUMB

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD LUMB,<br><br>         Plaintiff,<br><br>   vs.<br><br>BORDER PATROL SUPERVISOR PETE BURGOS, in his individual capacity, BORDER PATROL AGENT ALEJANDRO MARTINEZ, in his individual capacity; and DOES 1-20, in their individual capacities,<br><br>         Defendants. | Case No.: **'15CV2623 LAB NLS**<br><br>**COMPLAINT FOR DAMAGES, AND DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1.      The constitutional claim is alleged against Defendant Border Patrol Agent ALEJANDRO MARTINEZ ("BPA MARTINEZ"), supervising Border Patrol Agent PETE BURGOS ("SUPERVISOR BURGOS), DOES 1-20 ("DOES"), as authorized by *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971).

2.      Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. sec. 1331. Venue in this Court is proper pursuant to 28 U.S.C. 1391(b). Plaintiff, a retired police officer, resides in San Diego County, California, and the injuries and damages sustained by Plaintiff arise from a confrontation in the County of San Diego.

## PARTIES

3.     Defendant BPA MARTINEZ, SUPERVISOR BURGOS and DOES 1-20 were at all relevant times, an employees and law enforcement officer of United States Customs and Border Protection, Department of Homeland Security. Each are sued in his/her individual capacity. SUPERVISOR BURGOS is a resident of San Diego. Their residences are other defendants is unknown.

4.     The true name of Defendants DOES 1-20 is unknown to Plaintiff, who therefore sues these defendants by a fictitious name. Plaintiff will amend this Complaint to identify their true names when ascertained.

5.     Plaintiff DONALD LUMB ("LUMB") is, at all times relevant to this complaint was, a resident of San Diego, California.

## FACTUAL ALLEGATIONS

6.     At approximately 9:20 a.m. on November 20, 2013, LUMB was driving westbound from Boulevard approaching the westbound Interstate 8 checkpoint at Pine Valley just east of Sunrise Highway. A juvenile passenger accompanied him.

7.     As he approached the checkpoint LUMB rolled his window down in anticipation of being asked questions by Border Patrol agents.

8.     Upon arriving at the front of the checkpoint an Agent believed to be BPA MARTINEZ began gesturing for LUMB to stop. He appeared angry and stared at LUMB after LUMB smiled at him and said, "Good morning." BPA MARTINEZ continued to stare angrily at LUMB before barking, "What's your citizenship." After LUMB responded that he was a U.S. citizen, BPA MARTINEZ stared down LUMB for about ten seconds and then leaned down and looked at the car. After asking the juvenile passenger his citizenship, and hearing that the juvenile was also a U.S. citizen, LUMB asked BPA MARTINEZ if they were free to leave. BPA Martinez barked "No!" in a loud voice, continued to detain LUMB and his juvenile passenger, and then walked the perimeter of the car, peering into the windows, cargo area, and walking back around to LUMB. When he reached LUMB, LUMB again asked if he was free to go. BPA MARTINEZ against barked "No!" in an aggressive manner. LUMB asked BPA MARTINEZ why he was staring at him, and BPA MARTINEZ replied "Cuz."

9. LUMB began to explain to BPA MARTINEZ that he was a retired police officer and knew his rights. LUMB produced his police credentials and held them open for BPA MARTINEZ to review, and asked for a supervisor, as it appeared BPA MARTINEZ was going to continue to detain him.

10. A supervisor arrived, SUPERVISOR BURGOS, who told LUMB that he had seen everything that BPA MARTINEZ had done, and his agent had done nothing wrong. He ordered LUMB to drive to the secondary inspection area where he would be further detained. LUMB and his passenger were not free to leave.

11. LUMB arrived at the secondary inspection area, got out of his car, and stood at the driver's side rear tire area with his hands at his sides. SUPERVISOR BURGOS began yelling at LUMB to get back in the vehicle. LUMB attempted to comply but as he placed his hand on the car door handle to open it – and without any warning - he was sprayed with a chemical agent. LUMB was shoved from behind and slammed against the car, and then slammed to the ground. Approximately four-to-five sets of hands were grabbing at LUMB and one agent was kneeling on his back.

12. LUMB began pleading that he wasn't resisting. The agent on his back ("DOE 1") was screaming "Shut up! Shut the fuck up!" The agents forced LUMB into a single set of handcuffs causing instant pain to LUMB's shoulder. Another agent was yelling for agents to take LUMB's watch, and another screamed, "He's got a gun." As this was happening, the agents were causing more pain to LUMB's wrist and shoulder by rolling him side to side on the ground.

13. Once LUMB was on his left side, an agent approached him with a bottle of water and asked him if he needed to be d e contaminated from the face spray. LUMB told the agent he did not, but the agent removed the cap and threw the contents of the water against the right side of LUMB's face, causing the now dried chemical agent to run down his forehead and into his eyes causing his eyes to swell shut almost instantly. Agents lifted him up and took him to a bench.

14. After some 15 minutes another supervising agent contacted LUMB and assisted him in cleaning the running chemical out of his eyes. He asked LUMB what happened, and

LUMB explained. This supervising agent told LUMB he had been called to the scene to evaluate because there had been an incident.  He declined to release LUMB.

15.     After and hour and a half several plain-clothes supervising agents arrived. LUMB had now been detained for approximately two and a half hours. He asked an agent if he was arrested, and he was told he was arrested for assault on a federal agent ad resisting a federal agent. LUMB was driven to the Pine valley Border Patrol Station where he was stripped of his shoes, shoelaces, best, wallet, and credentials and placed in a holding cell.  He asked for a supervisor and was told there was no one available. He asked for assistance because his eyes were still burning painfully from the chemical agent. He was ignored.

16.     At approximately 3:30 LUMB was moved into an interview room by two agents. After the videotaped interview, at which time LUMB explained the unlawful detention, false arrest and excessive force used upon him, he was placed back in a cell. He again asked for a phone and a supervisor, and he was denied. At about 4 p.m. he was given two half frozen burritos.

17.     At approximately 5:45 more agents arrived and one of the federal agents LUMB he was being arrested for a felony violation of California Penal Code sec. 69. (Preventing or deterring an executive officer from performance of his duties).  LUMB asked the agent how he could arrest him on state charges.  The agent snapped back at LUMB, asking him if he was going to give him problems, and explaining that he was just taking orders from above. LUMB was driven to the downtown San Diego Sheriff's station.  He was fingerprinted at approximately 9:30 p.m. LUMB was bailed out on a $25,000 bond at approximately 5:45 a.m. on November 21, 2015.

18.     On November 22, 2015 the City of Chula Vista revoked LUMB's Concealed Carry Weapons Permit as a result of the California Penal Code sec. 69 arrest.

19.     On November 23, 2015 and again on November 27, 2015 LUMB was against detained by Border Patrol agents as he attempted to pass through checkpoints.

20.     The San Diego office of the District Attorney declined prosecution of LUMB.

21. During testimony at LUMB's administrative hearing on the revocation of his carry permit, SUPERVISOR BURGOS testified that he was unaware if a state law had been violated when he ordered the arrest of LUMB and did not know if the Border patrol even had authority to arrest LUMB.

22. Six months after his arrest, the hearing panel of the City of Chula Vista determined there was insufficient evidence that LUMB had committed any crime, and restored his Conceal Carry Weapons permit.

23. At all material times, the actions and omissions of each individual defendant were intentional, wanton and/or willful, malicious, deliberately indifferent to LUMB's rights, done with malice, grossly negligent and objectively unreasonable.

## FIRST CAUSE OF ACTION
### (Retaliation for Exercise of Constitutional Rights: *Bivens* Action)
### (Against All Individual Agents)

24. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

25. The Constitution protects persons from unnecessary and excessive use of force by government agents. It permits persons whose rights have been violated to complain against those that mistreat them.

26. The culture of the Border Patrol is to retaliate against individuals who challenge agents, by accusing them of being "disruptive", "challenging", argumentative", "having a bad attitude, and then falsely charging them with crimes in retaliation for the exercise of their first Amendment rights.

27. Defendants BPA MARTINEZ, SUPERVISOR BRUGOS and DOES 1-20, inclusive, retaliated against LUMB for exercising his First Amendment right to question their authority and question their behavior.

28. These officials took these retaliatory actions in order to punish LUMB for the exercise of those rights and to chill the exercise of those rights. The actions that they took would chill or silence a person of ordinary firmness from future First Amendment activities.

29. The actions alleged in this complaint that defendants took were designed to, and did inflict punishment on LUMB because he exercised his Constitutional rights, including asking agents repeatedly if he could leave when there was no reasonable suspicion or probable cause,

repeatedly asking for a supervisor, questioning the basis for his seizure and then questioning the basis for his arrest, informing the agents that he knew his rights and that they were violating them.

## SECOND CAUSE OF ACTION
### (Failure to Properly Supervise and Failure to Intervene: *Bivens* Action)
### (Against Supervisor Brugos and Does 1-20)

30. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

31. Supervising officers have a duty to Plaintiffs to properly supervise employee officers that hold the power, authority, insignia, equipment and arms entrusted to them.

32. Law enforcement officers who have a realistic opportunity to prevent a fellow officer from violating a citizen's Constitutional rights have a duty to intervene to protect the victim from the unconstitutional retaliation, use of force or violation of Due Process.

33. This was clearly established law.

34. Defendant SUPERVISOR BRUGOS witnessed BPA MARTINEZ's unlawfully detain and prolong the detention when he knew BPA MARTINEZ had no reasonable suspicion or probable cause. Defendant SUPERVISOR BRUGOS witnessed BPA MARTINEZ's abusive and caustic attitude when LUMB asked if he was free to leave twice, and when LUMB attempted to show his law enforcement credentials.

35. Defendant SUPERVISOR BRUGOS failed to intervene despite his legal obligation to do so in his supervisory position, and exacerbated the situation by informing LUMB that he had seen the contact and believed there was nothing wrong in how his agent handled the situation. Not only did Defendant SUPERVISOR BRUGOS failed to intervene, he exacerbated the situation by further prolonging the detention and arresting LUMB when he was unaware if a state law had been violated when he ordered the arrest of LUMB and when did not know if the Border patrol even had authority to arrest LUMB.

36. Other unknown supervisory agents throughout the day and into the evening hours of LUMB's false arrest also failed to intervene and correct the unlawful arrest when they had the ability and authority to do so. Those Doe defendants will be named after discovery begins.

36. Defendant supervisors failed to intervene despite their legal obligation to do so in their supervisory positions, which resulted in damage, loss of liberty, including pain and suffering.

37. In failing to intervene, supervisors acted, at a minimum, with deliberate indifference to the Constitutional violations they witnesses.

## FOURTH CAUSE OF ACTION
### (Violation of Fourth Amendment – Excessive Force: *Bivens* Action)
### (Against All Individual Agents)

38. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

39. The assault and battery on LUMB who was detained without reasonable suspicion and without probable cause constituted excessive force under the Fourth Amendment. LUMB was slammed into his car, slammed to the ground, and a knee put in his back.

40. The chemical spraying of LUMB in the face constituted excessive force under the Fourth Amendment.

41. The handcuffing of LUMB constituted excessive force under the Fourth Amendment.

42. The continued manhandling of LUMB throughout the day and evening by DOES 1-20 constituted excessive force.

## FIFTH CAUSE OF ACTION
### (Violation of Fourth Amendment – Unlawful Detention and Arrest: *Bivens* Action)
### (Against All Individual Agents)

43. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

44. The detention of LUMB by BPA MARTINEZ was without reasonable suspicion and prolonged in violation of the Fourth Amendment.

45. The detention and arrest of LUMB by SUPERVISOR BRUGOS was without reasonable suspicion or probable cause and in violation of the Fourth Amendment.

46.     The continued detention and arrest of LUMB by DOE 1-20 was in violation of the Fourth Amendment.

### ATTORNEYS FEES

Plaintiff required services of counsel to investigate and present his claims to the defendants for which he seeks payment of reasonable attorneys' fees and costs under 42 U.S.C. sec. 1988, the Equal Access to Justice Act and under *Bivens* claim.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and as follows:

1. For general and special damages against Defendants in an amount to be proven at trial;
2. For punitive damages against the individual defendant in an amount to be proven at trial; and
3. For cost of suit and interest incurred therein;
4. For attorneys' fees and costs according to proof; and
3. For any other relief that the Court deems proper.

Dated: NOVEMBER 21, 2015            /s/ Mary Frances Prevost
                                    Rodolfo Ruiz-Velasco (SBN 157782)
                                    Attorney for Plaintiff

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

8
COMPLAINT FOR DAMAGES